UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VALLEY MECHANICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:13-CV-378 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| BB&T INSURANCE SERVICES, INC., ) | |
| d/b/a BB&T HUFFAKER & TRIMBLE, ) | |
| HARTFORD CASUALTY INSURANCE ) | |
| COMPANY, HARTFORD FIRE ) | |
| INSURANCE COMPANY, HARTFORD ) | |
| UNDERWRITERS INSURANCE ) | |
| COMPANY, and TWIN CITY FIRE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Before the Court are motions to dismiss filed by Defendants Hartford[1] (Court File No. 15) and BB&TIS[2] (Court File No. 20). Plaintiff Valley Mechanical, Inc. ("Valley") only filed a response opposing Hartford's motion, but as Defendants' grounds for dismissal are the same, the Court assumes Valley also opposes BB&TIS's motion (Court File No. 18). Hartford filed a reply (Court File No. 19). For the following reasons, the Court will **GRANT** Defendants' motions and **DISMISS WITHOUT PREJUDICE** this case (Court File Nos. 15 and 20).

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] "Hartford" refers to Defendants Hartford Casualty Insurance Co., Hartford Fire Insurance Co., Hartford Underwriters Insurance Co., and Twin City Fire Insurance Co. The Hartford defendants note that for the purpose of the motion there is "no substantive distinction between them" (Court File No. 16, p. 1).

[2] "BB&TIS" refers to BB&T Insurance, Inc., d/b/a BB&T Huffaker &Trimble.

Valley is a manufacturer and fabricator of metal equipment. Its principal place of business is in Rossville, Georgia, and it also has a presence in Hamilton County, Tennessee. In 2006 BB&TIS and Hartford began providing workers' compensation insurance to Valley. BB&TIS sold the insurance and Hartford underwrote it. Providing such coverage required Defendants to classify Valley's workers, and such classifications affected the cost of coverage. Valley alleges that prior to 2012, BB&TIS instructed Valley not to conduct audits of its workers' classifications. In 2012, however, Valley conducted such an audit and found evidence of misclassification. Valley alleges such misclassifications had existed for years, causing Valley to pay inflated insurance premiums each year. Valley asserts this caused it to lose business by making its overhead and, consequently, its prices higher than its competitors. After uncovering the alleged misclassifications, Valley requested Hartford audit its classifications and premium charges from 2006 to 2012 for Valley's Georgia workers.

The National Council on Compensation Insurance, Inc. ("NCCI") then conducted a review in June 2012 of worker classifications at Valley's Rossville facilities. After NCCI uncovered misclassifications, Hartford acknowledged there were some misclassifications but only agreed to refund overpayments for the policy year ending in 2012, not for prior years' overpayments. In October 2012, Valley sent Hartford a letter stating that "Valley Mechanical is pursuing its administrative remedies through the State of Georgia at the present time. Valley Mechanical also intends to pursue similar relief with the State of Tennessee, through its insurance commissioner" (Court File No. 16-2).

In April 2013, Valley presented its misclassification claim to the Georgia Workers' Compensation Appeals Board ("Appeals Board"). The Appeals Board found for Valley and

2

determined that "Hartford must retroactively correct the classifications for each audit beginning in 2006 according to the NCCI Inspection and Classification Report" (Court File No. 16-3). Maintaining it was only required to refund premium overcharges for the 2011-2012 year, Hartford appealed the decision to the Georgia Commissioner of Insurance pursuant to Ga. Code Ann. § 33-9-26. Over Valley's objection, on October 30, 2013, the Commissioner ruled that the appeal could go forward and be heard on the merits (Court File No. 15-4).

Fourteen days after the Georgia Commissioner of Insurance allowed Hartford's appeal to proceed, Valley filed the instant diversity suit in the Eastern District of Tennessee (Court File No. 1). Soon after, Valley sought to stay the Georgia administrative proceedings in light of the federal litigation it had just initiated. A Georgia administrative law judge denied the motion and set a hearing on the merits in early 2014 (Court File No. 15-7). When the parties briefed the motions presently before this Court, the parties averred the Georgia administrative appeal was still pending, and the Court has no reason to believe that has changed. Also, to the Court's knowledge Valley has not yet availed itself of Tennessee's administrative procedure for reviewing workers' compensation insurance disputes.

In its federal complaint, Valley claims Defendants are liable for unjust enrichment, negligence, negligent or intentional misrepresentation, and fraud. Valley demands Defendants refund all overpayments as well as pay any additional consequential and punitive damages. Defendants moved to dismiss based on lack of jurisdiction because of Valley's failure to exhaust administrative remedies or, in the alternative, abstention doctrine.

3

## II. STANDARD OF REVIEW

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1), which addresses whether the district court has subject matter jurisdiction over the plaintiff's claims. Under Rule 12(b)(1), a defendant may challenge this Court's subject matter jurisdiction through a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack "questions merely the sufficiency of the pleading." *Id*. A court must take the allegations in the complaint to be true when reviewing a facial attack. *Id*. On the other hand, where there is a factual attack, the Court must weigh conflicting evidence provided by the plaintiff and the defendant to determine whether subject matter jurisdiction exists. *Id*. Such evidence can include, and is not limited to, "affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id*. The party asserting that subject matter jurisdiction exists has the burden of proof. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

As the Court's exercise of jurisdiction is based on diversity, the Court applies the law of the forum state, Tennessee. "[W]here a federal court's jurisdiction is based on diversity, it is in effect another court of the state." *Carnation Co. v. T.U. Parks Const. Co.*, 816 F.2d 1099, 1101 (6th Cir. 1987) (citing *Woods v. Interstate Realty Company*, 337 U.S. 535, 538 (1949)). This means the Court will only hear Valley's claims if a state court would. *See Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 793 (6th Cir. 1957) (noting that "if the courts of Ohio were closed to this plaintiff, so also was the federal court in that state in a diversity of citizenship case"); *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 6 (6th Cir. 2009) (quoting *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949) ("If recovery could not be had in the state court, it should

4

be denied in the federal court."). If this were not so, "those authorized to invoke the diversity jurisdiction would gain advantages over those confined to state courts." *Ragan*, 337 U.S. at 532.

## III. DISCUSSION

Defendants argue, *inter alia*, the Court should dismiss this case because Valley has failed to exhaust its administrative remedies in Georgia and Tennessee. This is premised on Defendants' contention that the courts of Tennessee would not hear this case until the administrative remedies in Tennessee and Georgia have been exhausted.

### A. Georgia

Defendants argue the Court should not allow the instant federal proceeding to go forward given the ongoing administrative proceedings in Georgia. As recounted above, the Georgia Workers' Compensation Appeals Board ruled in favor of Valley on its administrative claim related to insurance premiums for its Georgia workers. Only after the Georgia Commissioner of Insurance granted Hartford permission to appeal that decision did Valley file suit in federal court in Tennessee. A Georgia administrative law judge subsequently denied Valley's request to stay the Georgia proceedings. After noting that exhaustion of administrative remedies is required under Georgia insurance law unless the administrative process is unable to provide relief, the Georgia administrative law judge pointed out that

> Valley Mechanical, the party seeking the stay, initiated the Georgia administrative proceedings almost a year before it filed its federal suit. Now that Hartford has chosen to exercise its right to appeal the Appeals Board's decision to the Commissioner of Insurance, Valley Mechanical is attempting to cut off that right on the grounds that it has chosen to institute [a federal] suit encompassing the same issues. Although the federal suit may involve additional issues and additional parties, Valley Mechanical has failed to show good cause for short-circuiting the administrative process in Georgia that Valley Mechanical itself set in motion.

5

(Court File No. 15-7).

As an initial matter, Valley acknowledges that "Georgia requires that parties must exhaust administrative remedies before seeking judicial review" (Court File No. 18, p. 9); *See First Union Nat. Bank of Georgia v. Indep. Ins. Agents of Georgia, Inc.*, 197 Ga. App. 227, 227 (1990). Valley argues, however, that exhaustion is not required in the instant case because Georgia's administrative remedies are inadequate. *See Wilson v. Ledbetter*, 390 S.E.2d 846, 847 (Ga. 1990) ("Impossibility or improbability of obtaining adequate relief by pursuing administrative remedies is often a reason for dispensing with the exhaustion requirement . . . .") (quoting *Hilton Constr. Co. v. Rockdale County Bd. of Education*, 266 S.E.2d 157, 162 (Ga. 1980)). Specifically, Valley argues the Georgia administrative process will not provide adequate relief because consequential damages will not be available (Valley claims it lost revenue because inflated insurance premiums decreased its competitiveness by raising its overhead and thus its prices). Valley also contends Georgia's Office of State Administrative Hearings does not provide adequate discovery procedures, as it is limited to subpoenas and depositions, which must be ordered by an administrative law judge.

The Court does not find persuasive Valley's argument for exempting it from Georgia's mandatory administrative exhaustion requirement. The Court notes it was *Valley* that decided to avail itself of Georgia's administrative remedy when it sought relief for overpayment of workers' compensation insurance premiums. Valley presumably knew or should have known the remedies and discovery procedures available to it in that forum. Valley never explains why, just two weeks after Hartford was granted permission to appeal Valley's initial administrative victory, Valley suddenly realized it could only obtain an adequate remedy through litigation in a federal district court. Given Valley's own actions, the Court cannot conclude the administrative remedies available

6

in Georgia are inadequate such that Valley should be exempted from what Valley recognizes is Georgia's otherwise mandatory administrative exhaustion requirement. Accordingly, it would be impermissible for this Court to enter the fray now and potentially interfere with the ongoing administrative process in Georgia. If, after the process has concluded, Valley has outstanding legal claims coming under this Court's jurisdiction and not otherwise barred, Valley may choose to refile suit.

### B. Tennessee

Valley has not yet availed itself of the administrative process in Tennessee for premium overpayments related to its Tennessee workers. Defendants argue Valley should be required to do so, and to exhaust administrative remedies provided, before proceeding with this lawsuit. The Tennessee legislature has provided detailed rules for contesting workers' compensation insurance premiums. The relevant statute mandates that:

> Every insurer and rate service organization shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard on written request to review the manner in which the rating system has been applied in connection with the insurance afforded. If the insurer fails to grant or reject the request within thirty (30) days, the applicant may proceed in the same manner as if the application had been rejected. Any party affected by the action of the insurer on the request may, within thirty (30) days after written notice of the action, appeal to the commissioner who, after a hearing held upon not less than ten (10) days' written notice to the appellant and to the insurer, may affirm, modify, or reverse the action.

Tenn. Code Ann. § 56–5–309(b). In addition, after a hearing the Commissioner of Commerce and Insurance (the "Commissioner") may impose a civil penalty of $10,000 per occurrence if it determines that the insurer, without a lawful basis, assessed the employer a premium "[o]n the basis of improper classification of employees. § 56–5–309(c).

Pursuant to § 56–5–309(d), the Tennessee Department of Commerce and Insurance

7

promulgated administrative rules to implement the above law. The rules prescribe the procedures for requesting a rate review or audit and for appealing any decision. *See* Tenn. Comp. R. & Regs. 0780–1–82–.05 & 0780–1–82–.06. At the outset of a dispute, the insured is to first contact NCCI to determine if the dispute qualifies for the NCCI dispute resolution process. If after that stage an insured appeals to the Commission and wins, the Commissioner "[s]hall order the return or crediting of premiums paid by a insured that were not lawfully owed due to the improper application of the insurer's or rate service organization's rating system to the appellant's insurance coverage." Tenn. Comp. R. & Regs 0780–1–82–.10(e). In accordance with the organic statute, the regulations allow the Commissioner to impose civil penalties when an insurer, without a lawful basis, assesses an employer premium "[o]n the basis of improper classification of employees." Tenn. Comp. R. & Regs 0780–1–82–.10(i)(2). The rules also provide that a party aggrieved by the Commissioner's final order may seek judicial review under Tenn. Code Ann. § 4–5–322. Tenn. Comp. R. & Regs 0780–1–82–.11. The appeal statute states in relevant part:

> A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Tenn. Code Ann. § 4–5–322.

### 1. Exhaustion Doctrine Generally

Having outlined the statute and rules, the Court turns to whether exhaustion of these administrative procedures is required, or may be required, before a party may sue over a workers'

8

compensation insurance premium dispute.[3] The parties have not provided, and the Court has not found, any authority directly on point. Accordingly, the Court will review relevant authority and come to a conclusion regarding how a Tennessee court would likely decide this case.

"The exhaustion of administrative remedies doctrine reflects the courts' deference to administrative expertise. The doctrine provides that parties whose acts and interests are overseen by an administrative agency ordinarily may not obtain judicial relief for a supposed or threatened injury until all prescribed administrative remedies have been pursued to their conclusion." *Wilson v. Sentence Info. Servs.*, No. M1998-00939-COA-R3CV, 2001 WL 422966, at *2 (Tenn. Ct. App. Apr. 26, 2001) (citing *Bracey v. Woods*, 571 S.W.2d 828, 829 (Tenn.1978); 2 Charles H. Koch, Jr., Administrative Law and Practice § 13.21 (2nd ed.1997)). The doctrine enables an administrative agency to "(1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review." *Ready Mix, USA, LLC v. Jefferson Cnty.*, 380 S.W.3d 52, 63 (Tenn. 2012) (quoting *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn.1997)). In short, "[r]equiring that administrative remedies be exhausted often leaves courts better equipped to resolve difficult legal issues by allowing an agency to perform functions within its special competence." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 839 (Tenn. 2008) (internal quotation marks and citation omitted).

In Tennessee, "[w]hen a statute provides for an administrative remedy, an aggrieved party must ordinarily exhaust the remedy before seeking to utilize the judicial process." *Ready Mix*, 380

---

[3] As noted above, the Court sitting in diversity will only hear the case if a Tennessee state court otherwise could. *See Carnation Co.*, 816 F.2d at 1101; *Woods*, 337 U.S. at 538; *Lyon*, 249 F.2d at 793; *Aarti Hospitality, LLC*, 350 F. App'x at 6.

S.W.3d at 63. That being said, "unless the statute providing for an administrative remedy requires exhaustion *by its plain words*," exhaustion is not mandatory. *Id*. at 63-64 (internal quotation marks and citation omitted) (emphasis added); *see also Bailey v. Blount Cnty. Bd. of Educ*., 303 S.W.3d 216, 236 (Tenn. 2010) (citing *Colonial Pipeline Co.*, 263 S.W.3d at 838). Even when exhaustion is not mandatory, however, a court still has discretion to dismiss a case for failure to exhaust administrative remedies. *Ready Mix*, 380 S.W.3d at 64 ("Absent a statutory mandate, the exhaustion of the administrative remedies doctrine is a matter of judicial discretion."); *Bailey*, 303 S.W.3d at 236 ("Where exhaustion is not mandatory, it is within a court's discretion whether to dismiss a case for failure to exhaust administrative remedies.").

### 2. Mandatory Exhaustion

Accordingly, the initial question is whether the statute in question, by its plain words, makes administrative exhaustion mandatary before a party may sue in the courts. This is a simple task for some statutes. For instance, the workers' compensation injury statute provides that "[t]he parties to a dispute *shall* attend and participate in a benefit review conference that addresses all issues related to a final resolution of the matter as a *condition precedent* to filing a complaint with a court of competent jurisdiction, unless the benefit review conference process is otherwise exhausted pursuant to rules promulgated by the commissioner." § 50–6–239(b) (emphasis added). Courts have concluded from this language that "in order to obtain judicial review of the issue of compensability of an injury, the employer or insurer must wait until there has been an exhaustion of the benefit review conference process." *Tyson Foods ex rel. Gibson v. Tennessee Dep't of Labor & Workforce Dev., Workers' Comp. Div*., No. M2010-02277-COA-R3CV, 2011 WL 4790980, at *3 (Tenn. Ct. App. Oct. 10, 2011) (citing Tenn. Code Ann. §§ 50–6–225(a)(2)(A) and 50–6–239(b)).

10

In *Reeves v. Olsen*, on the other hand, the Tennessee Supreme Court found that a tax statute did not make exhaustion mandatory because it "expressly authorizes alternative avenues of relief." 691 S.W.2d 527, 530 (Tenn. 1985) ("Our reading of T.C.A. § 67-816 in its entirety leads us to the conclusion that the legislature intended that an election exist between the administrative remedy and immediate resort to the courts.").

The statute in the instant case, Tenn. Code Ann. § 56–5–309, falls somewhere between the workers' compensation injury statute in *Tyson Foods* and the tax statute in *Reeves*. Section 56–5–309 does not specifically state that completion of the administrative process is a "condition precedent" to filing a lawsuit as in *Tyson Foods*; nor does it specify other, non-administrative, avenues for relief as in *Reeves*. Instead, it provides that "any person aggrieved by the application of [an insurer's] rating system *may* be heard on written request to review the manner in which the rating system has been applied in connection with the insurance afforded." § 56–5–309(b) (emphasis added). If the party is still unsatisfied after that review, it "*may*, within thirty (30) days after written notice of the action, appeal to the commissioner . . . ." *id*. (emphasis added). Compare this to the mandatory language in the *Tyson Foods* statute: "[t]he parties to a dispute *shall* attend and participate in a benefit review conference that addresses all issues related to a final resolution of the matter as a *condition precedent* to filing a complaint with a court of competent jurisdiction . . . ." § 50–6–239(b) (emphasis added).

Despite § 56–5–309's permissive wording, Hartford argues that "it defies reason and logic to conclude that the Legislature of the State of Tennessee would have enacted, the Tennessee Commissioner of Commerce and Insurance would have promulgated, and administrative machinery would have been implemented to address [workers' compensation premium] controversies in order

11

to provide nothing more than an 'optional' avenue for litigants" (Court File No. 19, p. 2). Hartford cites *Colonial Pipeline Co.* to support its position, but that case is distinguishable from the present one. In *Colonial Pipeline Co.*, the Tennessee Supreme Court concluded a statute set forth mandatory, not permissive, procedures for contesting certain taxes. 263 S.W.3d at 832. The statute, which dealt with the procedure for filing a certain tax exception, provided in part that "[a]ll persons or entities authorized to file an exception under this section but failing to file an exception within the time permitted shall be deemed to have waived any objection to the assessments." Tenn. Code Ann. § 67–5–1327. The Court held that "the plain words of this statute direct that all taxpayers who, within the designated time period, fail to file an exception to their notice of assessment waive all objections to their assessments. Section 67–5–1327 clearly sets forth mandatory, not permissive, administrative procedures." *Colonial Pipeline Co.*, 263 S.W.3d at 840. The instant statute, on the other hand, does not discuss such a waiver or otherwise provide clear language indicating exhaustion is mandatory.

The other case cited by Hartford, *B.F. Nashville, Inc. v. City of Franklin*, is also inapposite. No. M2003-00180-COA-R3CV, 2005 WL 127082 (Tenn. Ct. App. Jan. 21, 2005). There, the Tennessee Court of Appeals noted that a writ of certiorari was the only mechanism for a trial court to hear a challenge to the application of a zoning law.[4] *Id*. at *11. Since a writ of certiorari requires a record to have been compiled, the court held the plaintiff needed to exhaust administrative remedies, thus producing a record for review, before challenging in court a specific application of the zoning law. *Id*. The instant case is different, however, as there is no authority saying a case of

---

[4] Such an as-applied suit is different from a facial attack, which the court ruled could be heard in an ordinary declaratory judgment action.

12

its kind must only be heard on a writ of certiorari. Accordingly, the case is distinguishable from *B.F. Nashville* because there is no requirement here that a record exist before filing suit.

Defendant BB&TIS relies heavily on Tenn. Code Ann. § 56–5–309's *requirement* that insurers set up a dispute resolution process: "Every insurer and rate service organization shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard on written request to review the manner in which the rating system has been applied in connection with the insurance afforded." § 56–5–309(b). BB&TIS argues that "[b]y requiring insurers to provide administrative review of their premiums and classifications the Tennessee legislature intended for such disputes to be resolved by a regulating body especially informed and knowledgeable of the issues in such disputes" (Court File No. 21).[5] BB&TIS also notes that the administrative process specifically addresses the subject matter of this lawsuit: premium overpayments related to misclassification of workers.

Ultimately, the Court cannot conclude § 56–5–309 contains a hard-and-fast requirement that parties exhaust administrative remedies before filing suit. Although Defendants are correct that the statute and related regulations set up a system for the administrative resolution of workers' compensation premium disputes, Defendants point to no case holding that § 56–5–309 *requires* a

---

[5] Defendants also point to the statutory provision governing appeal from a final decision of the Commissioner, which provides that "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, *which shall be the only available method of judicial review*." Tenn. Code Ann. § 4–5–322 (cited in Tenn. Comp. R. & Regs 0780–1–82–.11, the implementation regulations for § 56–5–309) (emphasis added). Instead of making § 56–5–309 the only avenue for relief, however, the above language simply provides that a party *appealing a final decision of the Commissioner* must abide by the rules in § 4–5–322, "the only available method of judicial review" of the Commissioner's decision. This does not speak to whether a party may bypass the administrative process altogether and seek relief directly from the courts.

13

party exhaust administrative remedies before filing suit. Furthermore, the statute does not by its plain words make exhaustion mandatory. *See Ready Mix*, 380 S.W.3d at 63-64. Rather, the statute provides that a party "may" avail itself of that process and "may" appeal to the Commissioner. These words do not indicate that exhausting such procedures is a condition precedent to filing suit. That the statute requires insurers to set up a dispute resolution process does not render it the sole avenue for relief. Accordingly, because § 56–5–309 does not require exhaustion by its plain words, the Court cannot conclude Valley was required to exhaust its administrative remedies in Tennessee before suing in relation to its Tennessee workers.

### 3. Discretion to Require Exhaustion

Even if "exhaustion is not mandatory, it is within a court's discretion whether to dismiss a case for failure to exhaust administrative remedies." *Bailey*, 303 S.W.3d at 236. And when a statutory scheme encompasses the dispute, the default position is that a party should normally exhaust those administrative remedies before filing suit. *See Ready Mix*, 380 S.W.3d at 63 ("When a statute provides for an administrative remedy, an aggrieved party must ordinarily exhaust the remedy before seeking to utilize the judicial process").

There are several considerations to take into account when a statute does not by its words mandate exhaustion. In addition to considering the general purposes behind the exhaustion requirement,[6] specific reasons for a court to not require exhaustion include: "(1) when the administrative remedy would cause undue prejudice to the subsequent assertion of a claim in court;

---

[6] That is, to enable an administrative agency to "(1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review." *Ready Mix*, 380 S.W.3d at 63 (quoting *Thomas*, 940 S.W.2d at 566).

14

(2) when the administrative remedy would be inadequate because the agency does not appear empowered to grant effective relief; and (3) when the agency has been shown to be biased or has predetermined the issue." *Pickard v. Tennessee Water Quality Control Bd.*, 424 S.W.3d 511, 523 (Tenn. 2013) (citing *Colonial Pipeline Co.*, 263 S.W.3d at 845); *see also Giovino v. Kincaid*, 01A01-9609-CV-00388, 1997 WL 122805, at *3 (Tenn. Ct. App. Mar. 19, 1997) (noting "[c]ourts are unlikely to require exhaustion when an agency is causing or threatening to cause irreparable injury through clearly illegal action"); *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 236 (Tenn. 2010) (explaining courts may not require exhaustion if the administrative process would be futile and noting that "[t]he futility exception is . . . quite restricted and has been applied only when resort to administrative remedies is clearly useless") (quoting approvingly in parenthetical *Communications Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994)). Courts are also more likely to require exhaustion when hearing a case would interfere with or interrupt an ongoing administrative process. *Reeves*, 691 S.W.2d at 530.

In the instant case, Valley does not contend participating in the Tennessee administrative process would cause undue prejudice to the subsequent assertion of a claim in court or that the agency is biased or has predetermined the issue. Nor does Valley argue that availing itself of administrative remedies would be futile or that the Commissioner cannot grant effective relief. Instead, Valley points out that litigating in this Court does not threaten to prematurely cut short any Tennessee administrative process because none has been initiated. In a similar vein, Valley asserts that allowing the case to proceed would not damage the ability of the administrative process to function efficiently or an agency to correct its own mistakes. *See Ready Mix*, 380 S.W.3d at 63. Valley also contends the case does not involve complex questions that require the expertise of

15

administrative bodies steeped in relevant regulations and laws. *Id*.

Valley's arguments are mainly a product of its decision not to initiate the Tennessee administrative process for its claims relating to its Tennessee workers (despite initiating—and later trying to abort—the Georgia administrative process for its Georgia workers). While it is true that proceeding before this Court would not affect an ongoing administrative process in Tennessee, that is just one factor the Court considers. Valley points to no authority holding that absence of an ongoing administrative process means a court must refuse to exercise its discretion to require a party to exhaust administrative remedies before filing suit. And, as explained above, Valley has not demonstrated any of the other sound reasons for refusing to require exhaustion.

In fact, there are several good reasons for requiring Valley to exhaust the Tennessee administrative process first. Section 56-5-509 and its implementing regulations set up a detailed administrative process to address the precise subject matter of the present suit. The rules set forth specific administrative procedures for reviewing insurance rating classifications and remedying errors found through reimbursement of premiums. Additionally, the Tennessee Commissioner of Commerce and Insurance may impose civil penalties if wrongful behavior is found. The Court also notes that the need for agency expertise and uniformity in decision making further strengthens the argument for exhaustion. In light of the above legal principles, the Court will require Valley to exhaust administrative remedies for its Tennessee workers before proceeding with a lawsuit in this Court. If, after the process has concluded, Valley has outstanding legal claims coming under this Court's jurisdiction and not otherwise barred, Valley may choose to refile suit.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motions and will **DISMISS**

16

**WITHOUT PREJUDICE** this case (Court File Nos. 15 and 20). There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**